**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| S&B INFRASTRUCTURE, LTD. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:25-cv-00011 |
| FLUOR FEDERAL PETROLEUM | § | |
| OPERATIONS, LLC | § | |
| | § | |
| | § | |
| Defendant. | § | |

**S&B INFRASTRUCTURE, LTD.'S RESPONSE TO FLUOR FEDERAL**
**PETROLEUM OPERATIONS, LLC'S MOTION FOR SUMMARY JUDGMENT**

S&B Infrastructure, Ltd. ("S&B") files this Response in Opposition to Fluor Federal

Petroleum Operations, LLC's ("FFPO") Motion for Summary Judgment, and respectfully

shows the Court as follows:

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

### A. Statement of the Case

1.      S&B and FFPO contracted for underground piping and excavation services at the

Bryan Mound Strategic Petroleum Reserve ("the Project"). S&B entered into the

subcontract (the "Contract") in reliance on representations made by FFPO. After beginning

the work, however, S&B discovered that FFPO's specifications and representations

provided were deficient requiring S&B to perform substantial extra, unanticipated

excavation work. When the issue was raised during the project, FFPO instructed S&B to

continue performance, with a representation that a change order would be approved once

the guaranteed neat quantities of dirt were exhausted.

2.    S&B sued FFPO for breach of contract, and in the alternative, recovery in quantum meruit. FFPO's Motion for Summary Judgment alleges (1) S&B has waived its claim for breach of contract for allegedly failing to provide the proper strict notices under the subcontract and (2) recovery for extra work under quantum meruit is precluded.

### B. Summary of S&B's Response

3.    FFPO's Motion for Summary Judgment (the "Motion") is premature and untimely at this early stage as the parties are only now beginning the discovery process. The parties have propounded written discovery to each other, but neither have responded yet as both sides have agreed to extend the response deadlines. No documents have been exchanged, search terms and custodians are being worked out to ensure proportionality in eDiscovery productions, and the parties just recently filed a motion for entry of protective order.[1] Thus, summary judgment is inappropriate at such an early stage of the dispute.

4.    Even considering the merits of its motion, FFPO's assertions are flawed as there are genuine issues of material fact. FFPO alleges S&B was untimely as to providing the five-day "Initial Notice" and ten (10) day "takeoff" under Section 35 for "Changes;"[2] S&B was untimely in providing the twenty-one (21) day "notice" of a "claim" under Section 46 for "Claims;"[3] and finally, that S&B was untimely in notifying as to Differing Jobsite Conditions under Section 34.[4]

---

[1] **Exhibit 2**, Unopposed Motion for Entry of Agreed Protective Order, ECF No. 29, dated September 4, 2025.
[2] **Exhibit 3**, Fluor Federal Petroleum Operations, LLC's Motion for Summary Judgment, ECF No. 28 at pp. 13 & 17.
[3] *Id.* at p. 20.
[4] *Id.* at p. 23.

5.      But determining whether notice was provided per the parties' Contract is a fact question. The "notice" deadlines and requirements FFPO cites from the Contract are ambiguous and lack sufficient clarity to render summary judgment. The Contract makes use of terms such as "Initial Notice," "Claims," and "Change," but fails to define those terms. Therefore, it invariably involves fact questions as to what type or form of notice is required and whether S&B satisfied those requirements. FFPO distorts these ambiguities to suit its needs, which ignores the entirety of the Contract's plain language and renders it superfluous. Even FFPO's misguided Contract interpretation raises fact questions.

6.      Additionally, FFPO's arguments misrepresent the facts and law surrounding the fundamental nature of the dispute—Notice. First, S&B communicated openly and timely throughout the process. When any issues arose, S&B informed FFPO, only to be rebuffed and told to proceed with the work. Per FFPO's instruction, S&B was to exhaust the excavation quantities and then re-raise the issue with FFPO. FFPO had adequate notice throughout the entire Project of S&B's progress on performance of the Contract. As soon as S&B first determined the "relied upon" quantities provided by FFPO during the bidding process were insufficient for the scope of the work required, it began notifying FFPO of its concerns.

7.      FFPO relies exclusively on case law evaluating compliance with strict notice provisions, but each case is distinguishable as they all had strict notice requirements expressly defined in their Contracts. Here, there is no definition of what constitutes notice and how it is effectuated. At its core, FFPO's Motion is predicated on application of strict notice despite a complete absence of strict Contract notice requirements, and the result is,

at a minimum, a total disregard for the fact questions that accompany such an interpretation. As S&B can show a genuine issue of material fact as to its breach of contract claims, summary judgment is improper.

8.     Finally, FFPO's request for summary judgment on S&B's quantum meruit claim and Texas Prompt Pay Act (TPPA) claims, alleging equitable relief is barred when the action sounds in contract, and that because S&B's breach claims fail, its Prompt Pay Act claim must fail. Again, FFPO's arguments are misguided.

9.     The Federal Rules expressly allow a party to plead claims in the alternative, even when those claims are inconsistent or contradictory. As such, S&B's quantum meruit claim is properly pled at this time. Further, simply because FFPO summarily dismisses the fact issues surrounding S&B's breach of contract claims, it cannot apply this flawed reasoning to dismiss S&B's TPPA claim. FFPO's summary judgment request must be denied.

## II. <u>RESPONSE TO FFPO'S STATEMENT OF UNDISPUTED FACTS</u>

10.     FFPO's statement of undisputed facts contains several inaccuracies that warrant response.[5] Globally, FFPO's "undisputed facts" rely on inference, lack context, and relies on Contract ambiguity. Individually, S&B responds as follows:

11.     In paragraph 1, none of the quoted language can be found in the cited Exhibits 1 or 2. Additionally, FFPO does concede that it provided quantities that could be relied upon in its bid documentation. But if S&B can rely on FFPO's representations, then S&B had no reason to verify the quantities.

---

[5] **Exhibit 3**, ECF No. 28 ¶¶ 1-30.

12.     In paragraph 2, S&B agrees that the excerpt shows that the "neat quantities" were calculated "in accordance with the Approved for Construction (AFC) drawings," and that S&B could rely upon the quantities for bidding purposes.

13.     In paragraph 3, S&B disagrees as to the date as it is unclear from the cited document. Further, S&B rejects any inference that arise from that isolated, out of context, quote.

14.     In paragraph 4, S&B agrees that the document reflects a submission date of October 29, 2021.

15.     In paragraph 5, S&B agrees that the document reflects a Contract execution date of January 6, 2022.

16.     In paragraph 6, FFPO seeks to recharacterize its prior material breach into an immaterial disputed fact. But whether FFPO provided the underground AFC isometrics speaks directly to the accuracy of FFPO's representations as to quantities to be relied upon and S&B's ability to perform the work as represented by FFPO in the bid documents.

17.     In paragraph 7, S&B denies that the email cited acknowledges that FFPO was not required to give S&B natives of the drawings. Further, it provides no context for this email, and whether it is related to the entirety of the underground isometrics or if it is related to a single aspect of the work. Moreover, nothing in the email shows that S&B agreed that FFPO was not obligated to provide these drawings.

18.     In paragraph 8, S&B agrees this email shows FFPO reversed its position after awarding the Contract to S&B by asserting that the AFC drawings did not exist and FFPO would not be providing them.

19.    In paragraph 9, FFPO offers its first of several mischaracterizations of what constitutes a change under the Contract and what occurred. FFPO speculates that "**if S&B considered FFPO's alleged failure to provide drawings to be a 'change,'** then S&B had five (5) Working days from January 21, 2022 email to submit an 'Initial Notice' to FFPO."[6] First, a change from FFPO must be sent by the contract administrator, Marriane Martin. FFPO's Exhibit 11 clearly is not from Ms. Martin. Second, FFPO is attempting to recharacterize a prior material breach. But FFPO ignores its failure and instead claims a unilateral change obligating S&B to provide notice. FFPO's "fact" is a legal conclusion with no support. No notice was required, and even if it was, FFPO provides no support for its contention notice was not provided.[7]

20.    In paragraph 10, FFPO wrongly states that S&B was required to submit a detailed takeoff with supporting calculations. Again, change is not defined and is a fact question whether a change occurred. Further, notice is not defined and is a fact question what S&B's obligations entail.

21.    In paragraphs 11 and 12, FFPO conflates the verification of the underground site (with ground penetrating radar (GPR) with the excavation of the site (using hydro-excavation methods). More importantly, due to FFPO's material breach by not providing the underground isometrics, S&B requested, and was approved, to use the hydro-excavation method to verify the site installation. Again, a fact question arises as to the meaning of change and notice.

---

[6] **Exhibit 3**, ECF No. 28 ¶ 9 (emphasis added).
[7] Neither ECF No. 28 FFPO Exhibit 1 (affidavit) nor ECF No. 28 FFPO Exhibit 11 (Email) show that S&B did not provide notice.

22.    In paragraphs 13 & 14, FFPO again mischaracterizes the events surrounding S&B's RFI-0093. FFPO presupposes a change requiring notice. Just like FFPO's baseless claims in paragraphs 9 and 10, FFPO makes the same speculative legal conclusion which ignores the fact questions as to change and notice.

23.    In paragraph 15, S&B agrees that FFPO has inserted a snippet of a larger email. S&B rejects any inference that arise from that isolated, out of context, quote.

24.    In paragraph 16 & 17, S&B acknowledges FFPO sent the emails but disputes the overall context surrounding the information conveyed. There are fundamental fact questions surrounding FFPO's representations as to the scope of work to be performed, what was expected, and what was possible due to FFPO's material breach in failing to provide AFC isometrics.

25.    In paragraph 18, FFPO references a letter that is immaterial to the current dispute as it misconstrues S&B's position. S&B informed FFPO that it was excavating significantly more quantities that FFPO represented, and because FFPO failed to provide the AFC isometric drawings as required.

26.    In paragraph 19, FFPO inaccurately describes S&B's claim regarding the additional excavation quantities as a differing site condition claim. Further, it disregards its own statement that Article 34 different site conditions is inapplicable, which S&B agrees as its letter never referenced Article 34.

27.    In paragraph 20, S&B disputes it never responded to FFPO's letter. S&B and FFPO had many discussions related to the issue surrounding additional excavation spoils.

28.     In paragraph 21, S&B lacks sufficient information to adequately rebut the statement. The providence of the exhibit is unknown, it fails to state it is trying to improve S&B's work, and it is unclear what is the purpose of introduction as it appears immaterial to FFPO's request for summary judgment.

29.     In paragraphs 22-24, S&B lack sufficient evidence to adequately address FFPO's alleged facts. Exhibit 19 is corrupted and over 60 pages in length. FFPO provides no specific page citation, nor would that even help due to the deficient nature of the exhibit.

30.     In paragraph 25, S&B agrees FFPO rejected COR-076 R0, but does not agree the rejection was warranted, or that this was the end of the discussions surrounding COR-076 R0.

31.     In paragraph 26, S&B rejects FFPO's allegations. Claim is not defined in the Contract, which inherently raises a fact question. Further, it contains a subjective condition requiring notice of a claim when S&B "became aware of the claim." When S&B believed a claim had arisen is again a fact question and in dispute.

32.     In paragraph 27, S&B agrees it sent COR-076 R1.

33.     In paragraph 28, S&B rejects FFPO's characterization, and convenient omission of statements and commentary connected to the COR-076 R1 that is at the heart of this dispute that would inevitably raise a fact question.

34.     In paragraph 29, FFPO quotes language from the cited exhibit, but fails to identify where in that exhibit the language originates. It is not S&B, nor the Court's obligation to sift through FFPO's exhibits in search of support for its claims.[8]

35.     In paragraph 30, FFPO conveniently glosses over the communications and correspondence between S&B and FFPO as not relevant to the Motion and simply reaches the legal conclusion S&B was untimely without regard to the underlying facts of the situation and ambiguity of the contract provisions invoked.

### III. STATEMENT OF UNDISPUTED FACTS

36.     On January 6, 2022, FFPO awarded S&B the Contract for Work on the Strategic Petroleum Reserves Life Extension 2 Project at Bryan Mound ("Project").[9] The work on the Project would require S&B to replace an extensive network of underground piping ("the Work").

37.     At the time of bid, FFPO instructed S&B to rely upon guaranteed neat quantities provided by FFPO.[10] S&B initially proceeded with the Work based on these assurances, however, it soon discovered that the scope of Work required far surpassed what was contemplated for in the Contract.[11] FFPO's assurances regarding depths and required excavation proved to be flawed, and S&B was required to work at increasing greater depths to ensure completion of the Work.[12] This greater depth resulted in increased quantities and

---

[8] FED. R. CIV. P. 56(c)(1)(A); *Nicholas Acoustics & Specialty Co. v. H&M Constr. Co.*, 695 F.2d 839, 846-47 (5th Cir. 1983) ("Judges are not ferrets!").
[9] **Exhibit 4**, Subcontract No. 4500057169 at p. 5.
[10] **Exhibit 1**, Affidavit of Scott Pope ¶ 8.
[11] *Id.*
[12] *Id.*

significant complexity that far surpassed what was represented by FFPO during the bidding process.[13]

38.    During the bid process, FFPO's instructions to offerors (ITO) included a contract model, pricing sheets, summary of work, reference drawings, but failed to include isometric drawings for underground piping.[14] Beyond omitting key isometric drawings, the ITO stated that the provided quantities were intended to be "treated as relied upon for bidding and contracting purposes.[15] These quantities [were] not for information only and [did] not require verification."[16] As such, S&B did as instructed and used the "relied upon" quantities in making their bid.[17]

39.    After being awarded the contract in January 2022, FFPO informed S&B that it did not have underground piping isometrics and chose not to provide them for underground lines due to elevation uncertainties, underground obstructions, and other such issues.[18] For the next year, S&B proceeded, *at FFPO's direction and approval*, with hydro-excavation in place of ground penetrating radar as the primary method to investigate the site installation.[19] Throughout this period, FFPO and S&B worked side-by-side, with daily and weekly meetings occurring as to the status and actions on the Project.[20]

---

[13] *Id.*; **Exhibit 5**, Email from Justin Nations (S&B) to FFPO dated June 30, 2023.
[14] **Exhibit 1** ¶ 10.
[15] *Id.*
[16] *Id.*; **Exhibit 6**, Solicitation Instruction to Offerors Document at p. 12.
[17] **Exhibit 1** ¶ 10.
[18] *Id.* at ¶ 12; **Exhibit 7**, Email from Gary Goolsby (FFPO) to S&B dated January 21, 2022.
[19] **Exhibit 1** ¶ 12; **Exhibit 8**, RFI-0093.
[20] **Exhibit 1** ¶ 12.

40.     FFPO's failure to provide the underground AFC drawings significantly slowed the project's progress as the circumstances prevented S&B from working most efficiently.[21] On March 3, 2023, S&B submitted a Productivity Recovery Plan to FFPO which, among other things, informed FFPO that the lack of underground piping isometrics called for by the Contract was the cause of the delays.[22] Between March 3, 2023, and the end of June 2023, S&B made every effort to overcome the impediments imposed by FFPO.[23]

41.     As S&B's work progressed, S&B notified FFPO of the increasing quantities that differed from FFPO's guaranteed quantities at the time of the bid. S&B sent its June 30, 2023 email with attachments describing the excessive excavation quantities, costs, and an estimate of quantities to complete the project.[24] Communications between Justin Nations of S&B and Raleigh Fisher of FFPO then continued back and forth for several days, with FFPO rejecting S&B's notice.[25]

42.     On July 17, 2023, Justin Nations sent an email to Marianne Martin, FFPO's subcontract administrator, looping her in on the matter.[26] S&B again notified FFPO that the quantities had materially increased / differed from FFPO's guaranteed quantities at the time of bid. S&B explained to FFPO that the discrepancy was due to FFPO's bid instructions containing inaccurate calculations.[27] Through a separate letter on the same day,

---

[21] **Exhibit 1** ¶ 15.
[22] *Id.*; **Exhibit 9**, Productivity Recovery Plan dated March 3, 2023, at p. 3.
[23] **Exhibit 1** ¶ 15.
[24] *Id.* at ¶ 17; **Exhibit 5**, Email from Justin Nations (S&B) to FFPO dated June 30, 2023.
[25] **Exhibit 1** ¶ 17 ; **Exhibit 10**, Emails between Justin Nations and Raleigh Fisher from July 7, 2023, through July 13, 2023.
[26] **Exhibit 1** ¶ 19; **Exhibit 11**, Email from Justin Nations (S&B) to Marianne Martin (FFPO) dated July 17, 2023.
[27] **Exhibit 1** ¶ 19.

S&B notified FFPO that the volume of excavation required exceeded the volume provided in the pricing summary sheets and that this change would affect schedule and costs.[28]

43.    On July 19, 2023, Marianne Martin responded by letter and stated in part that "[u]ntil the total actual neat quantities is established as more than what is in the pricing summary sheet, FFPO will not entertain any change order on this matter.[29] If the experienced neat quantities surpass the pricing summary sheet's quantities as the required work continues, S&B will track and submit a change order for review." In other words, Martin instructed S&B to carry on the work, that until the quantities were exhausted there was no change (or certainly no need for a change order at this time), and once the quantities were surpassed, S&B could then submit a change order.[30] FFPO either knew there wasn't yet a change or received notice of the change and effectively told S&B to continue until a later date, waiving any contractual deadlines.

44.    For the next several months, S&B and FFPO communicated back and forth in an attempt to resolve all productivity issues on the Project.[31] S&B, as it had since August 2022, provided monthly updates regarding schedule slippage due to the lack of isometric drawings of the subsurface and the increased excavation quantities.[32] Each subsequent recovery plan submitted by S&B was met with an FFPO rejection, but also instructions to

---

[28] **Exhibit 1** ¶ 19; **Exhibit 12**, Letter from Justin Nations (S&B) to Marianne Martin (FFPO) dated July 17, 2023.
[29] **Exhibit 1** ¶ 22; **Exhibit 13**, Letter from Marianne Martin to S&B dated July 19, 2023.
[30] **Exhibit 1** ¶ 22.
[31] **Exhibit 1** ¶ 24.
[32] *Id.*

carry on the work until bid quantities were exhausted and to resubmit a new recovery plan.[33]

45.     On October 17, 2023, S&B submitted Change Order Request 076R0 which called for an adjustment of the contract amount due to the lack of underground isometric drawings, the need for hydro-excavation and increased manpower, and the increased excavation quantities. FFPO rejected the Change Order Request and instructed S&B not to submit additional change order requests "unless actual evidence is provided to support a change in requirements."[34] From October through March, the Parties had countless meetings and discussions related to S&B's entitlement for a change order and potential revisions to COR-076 R0.[35] For example, on December 15, 2023, S&B notified FFPO that it had reached 90% of the neat Contract quantities for excavation, providing notice of the excavation disparity, and FFPO rebuffed S&B and instructed the work to continue.[36]

46.     On March 8, 2024, S&B submitted Change Order Request 076R1, reiterating many of the issues mentioned in the previous change order request but also requesting compensation for the exorbitant increase in costs to S&B due to misleading provisions and understated guaranteed quantities provided by FFPO at the time of bidding.[37] This change order request included exhaustive supporting information to which FFPO soon after rejected. In October of 2024, S&B and FFPO mediated twice but were unable to reach an

---

[33] *Id.*
[34] *Id.* ¶ 25; **Exhibit 14**, FFPO rejection of Change Order Request 076R0.
[35] **Exhibit 1** ¶ 25.
[36] *Id.*
[37] *Id.* ¶ 27; **Exhibit 15**, Change Order Request 076R1.

agreement in both sessions.[38] S&B filed its original petition in Brazoria County District Court, before this case was removed to this Court on December 27, 2024.[39] S&B sent its first request for production of documents on August 7, 2025, and on August 15, 2025, FFPO filed its Motion for Summary Judgment.[40]

47.    Importantly, FFPO filed the Motion for Summary Judgment despite no initial disclosure documents, and no written discovery exchanged up to this point. FFPO's Motion is premature, fails to account for substantial and germane fact questions, and relies, to its own fault, on misguided contract interpretation of ambiguous provision and terms, the least of which being a strict notice requirement that cannot be found in the Contract's plain language.

## IV. <u>STANDARD OF REVIEW</u>

48.    A party moving for summary judgment bears the ultimate burden of proof, and it must establish a prima facie case with admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Courts may grant summary judgment on an issue only when 'no genuine dispute as to any material fact exists and the movant is entitled to judgment as a matter of law." *Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 502 (5th Cir. 2022) (internal citation and quotations omitted). A genuine issue of material fact exists when there is evidence sufficient for a rational trier of fact to find for the non-moving party. *Schnell v. State Farm Lloyds*, 98 F.4th 150, 156 (5th Cir. 2024). The court shall "consider all of the evidence in the record but refrain from making credibility determinations or weighing the

---

[38] **Exhibit 1** ¶ 27.
[39] **Exhibit 16**, December 27, 2024 Notice of Removal, ECF No. 1.
[40] **Exhibit 17**, S&B's First Requests for Production of Documents; *see generally* **Exhibit 3**, ECF No. 28.

evidence." *Reitz v. Woods*, 85 F.4th 780, 787 (5th Cir. 2023). All justifiable inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). FFPO fails to sustain its burden that there is no genuine dispute regarding any material fact. Therefore, the Court should deny FFPO's Motion for Summary Judgment.

## V. <u>ARGUMENT</u>

### A. <u>FFPO's Motion for Summary Judgment Is Premature</u>

49.     As a preliminary matter, the Motion for Summary Judgment should be denied on the basis that it is premature. "The plain language of Rule 56(c) mandates the entry of summary judgment . . . after *adequate time for discovery*." *Celotex*, 477 U.S. at 317. (emphasis added). "[I]n the Fifth Circuit, courts have discretion to deny a motion for summary judgment as premature." *George v. Go Frac, LLC*, No. SA-15-CV-943, 2016 WL 94146, at *2 (W.D. Tex. Jan. 7, 2016); *accord Sewell v. Sewerage & Water Bd. of New Orleans*, 697 F. App'x 288, 291 (5th Cir. 2017); *Prospect Capital Corp. v. Mut. of Omaha Bank*, 819 F.3d 754, 757 (5th Cir. 2016).

50.     It is well established that that Courts routinely deny motions for summary judgment as premature because discovery had not been completed. *See F.D.I.C. v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993) ("Summary judgment is appropriate if, *after discovery*, there is no genuine dispute over any material fact.") (emphasis in original); *Cree v. Braco*, No. 2:21-CV-00208, 2022 WL 1379512, at *1 (S.D. Tex. Apr. 6, 2022) (recommending the district judge deny without prejudice plaintiff's summary judgment motion as premature, where defendant had not yet answered and no discovery had taken place), *R. & R. adopted*

*sub nom. Cree v. Collier*, 2022 WL 1321043 (S.D. Tex. May 3, 2022); *George v. Go Frac, LLC*, No. SA-15-CV-943-XR, 2016 WL 94146, at *3 (W.D. Tex. Jan. 7, 2016) ("Granting summary judgment not just before discovery has been completed, but before it has even begun on this issue, would be premature."); *Whitfield v. Miss. Bureau of Narcotics*, No. 3:17 cv 987-HSO-JCG, 2019 WL 6534144, at *4 (S.D. Miss. Dec. 4, 2019) ("Because neither party has had adequate time to complete discovery, [p]laintiff's [m]otion for [s]ummary [j]udgment should be denied without prejudice as premature.").

51.    At this point in the dispute, the parties have made initial disclosures but have not exchanged any documents or any other discovery since the entry of the Joint Discovery/Case Management Plan.[41] The parties are currently negotiating custodians, and possibly search terms, to ensure the discovery requests and productions are proportional to the needs and costs of the case. Additionally, the parties just filed the agreed protective order. To be clear, this suit has only progressed four months beyond the initial pretrial conference held in May.[42] There has been no meaningful progression of discovery. The Motion should be denied as premature at least until the parties have had an opportunity to further develop discovery.

### B. Defendant Is Not Entitled to Summary Judgment Because a Fact Issue Exists Regarding Interpretation of Key Contract Provisions.

---

[41] S&B sent Requests for Production and Interrogatories on August 7, 2025. FFPO's response to these discovery requests was originally due September 8, 2025. FFPO's response to S&B's first requests for production was originally due—September 8, 2025. FFPO has since requested an unopposed two-week extension to its response deadline. Such response is now due September 22, 2025.

[42] *See* May 15, 2025 Minute Entry for Initial Scheduling Conference.

52. FFPO alleges S&B failed to comply with the strict notice requirement of the Contract, effectively burying S&B's right to relief: (1) by not timely submitting a change when FFPO failed to provide underground AFC drawings; (2) by not timely submitting a change when FFPO responded to RFI 0093; and (3) not timely filing a claim after FFPO rejected Change Order Request 076. FFPO's position fails because strict notice is inapplicable, S&B did provide notice, and the Contract ambiguity creates a fact question.

### 1. Contract Ambiguity

#### i. Specific Terms of the Contract are Entirely Ambiguous

53. Article 1 to the General Terms of the Contract fails to define specific terms such as Initial Notice, Changes, Claims, notification, and takeoff. While the Contract requires S&B to give "Initial Notice" for Changes, the Contract does not prescribe any specific method for providing such notice nor does it provide for what clearly constitutes a Change under the Contract. In addition, should a dispute arise as this one has, the term Claims in the contract suffers from the same deficiencies. As the Contract does not provide definitions for any of these material terms, the procedures under Articles 35, 46, and 47 are rendered hopelessly ambiguous as it is unclear what is required of S&B. Because the Contract suffers from multiple ambiguities, a fact question exists regarding proper interpretation of these provisions and their application that the Court must determine. FFPO's Motion therefore should be denied.

#### ii. Strict Compliance with the Notice Provisions Does Not Exist in The Contract

54.    FFPO wholly fails to recognize the ambiguities referenced in the section above but specifically grounds its Motion in an interpretation of notice that cannot be found in the Contract and relies upon inapplicable caselaw to do so.

55.    FFPO's position can be distilled to the holding in *Emerald Forest*: "[w]hen a contract provides for ***a particular form of notice***, compliance with such provisions is a condition precedent . . . ."[43]. Each of the cases FFPO relies upon are all focused on the same theme: strict interpretation of a contractual notice requirement that is explicitly defined.[44] But each of the cases cited had explicit provisions detailing a particular form of notice that the party was obligated to follow. Further, FFPO relies heavily on the proposition "**actual notice is not a substitute for written notice.**"[45]

56.    Yet, the Parties' Contract contains no such explicitly defined form of notice, be it time place, person, or whether or not in writing.[46]

57.    Therefore, summary judgment is improper as the Court must first resolve the ambiguity with what the parties intended at the time of entering into this agreement as to what notice was to be provided, the form it should take, and whether S&B complied. That issue is a question of fact for the Court to determine. FFPO's Motion therefore must be denied.

### 2.  S&B's Notice Obligation Was Not Triggered

---

[43] **Exhibit 3**, ECF No. 28 at p. 14 (emphasis added) (citing *Emerald Forest*, 679 S.W.3d at 54).

[44] Specifically, FFPO points to *Emerald Forest Util. Dist. v. Simonsen Const. Co.*, 679 S.W.2d 51 (Tex. App. 1984); *James Construction Group, LLC v. Westlake Chemical Corporation*, 650 S.W.3d 392 (Tex. 2022); *Interstate Contracting Corp. v. City of Dallas*, 407 F.3d 708 (5th Cir. 2005); and *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000 (Fed. Cir. 2015).

[45] **Exhibit 3**, ECF No. 28 at p. 14 (emphasis in original) (citing *James*, 650 S.W.3d at 412).

[46] **Exhibit 4**, Subcontract 4500057169, Part III at p. 12 § 35.

i.    The Failure to Provide Drawings and the Use of Hydro-Excavation were not Changes

58.    As a preliminary matter, regarding S&B's request for underground AFC drawings, FFPO's Motion twists the events leading to this dispute to suit its own arguments. Specifically, the underground AFC drawings were required to be given under the Contract and FFPO's failure to tender these drawings was a material breach. FFPO attempts to cover up its prior material breach by characterizing it as a Change for which S&B would be required to give Initial Notice.

59.    However, again, this is a totally subjective and self-serving interpretation of the Contract for which there is no basis. The plain language of the Contract is ambiguous and cannot support such an interpretation. But even assuming the Contract can be applied as written, FFPO points to events that are not Changes under the Contract.

60.    Article 35 in Part III of the Contract states "the SUBCONTRACT shall be subject to change by additions, deletions, or revisions thereto by [FFPO]." Further, "Only the Subcontract Administrator is authorized on behalf of [FFPO] to issue changes whether formal or informal. [S&B] will be notified of such changes by receipt of additional and/or revised drawings, specifications, exhibits or other written notification." Article 35 continues, "If [S&B] considers that a change is involved that could affect its costs of performing the work or impacts the critical path of the schedule for performance of the WORK, [S&B] is obligated to inform [FFPO] with an Initial Notice within five (5) working days of *[S&B] receiving written notification of the change*. Thereafter, [S&B] shall submit to [FFPO] within ten (10) working days after submission of the initial notification, a

detailed takeoff with supporting calculations and pricing for the change, together with any requested adjustments in the schedule."

61.     FFPO cites to *AAB Joint Venture v. United States*, 75 Fed. Cl. 414 (2007), to support its claim that S&B failed to provide notice of a Change regarding costs associated with RFI-0093. However, this case is inapplicable. As FFPO points out in its Motion for Summary Judgment, the contractor in *AAB* was given discretion to pursue methods not originally called for in the Contract. That is not the case here. The Contract always called for hydro-excavation as one of several available methods for excavation. Because S&B did not have access to drawings, its attempts to use ground penetrating radar to locate the underground facilities were ineffective and inaccurate. Rather than change the scope of work, S&B sought to pivot the means and methods to hydro-excavation as the primary means of investigating the underground utilities, so it is completely inaccurate to characterize these events as Changes.

62.     Even if RFI-0093 could be considered a Change, as mentioned previously, the form of notice is completely ambiguous, and a fact question exists as to what contractually constitutes notice. FFPO concludes that S&B never gave written notice and S&B's claims are therefore barred, even though the Contract is completely silent as to what form of notice is required. It is an undisputed fact that S&B and FFPO constantly communicated regarding the costs and issues that S&B encountered. It is inconceivable that FFPO could claim to have not been given proper notice by S&B given their constant back and forth communications. Without clear guidance from the Contract for what properly satisfies the

20

notice requirement, a fact question exists on this point solely for the Court to determine making denial of FFPO's Motion proper.

      ii.    <u>A Claim under Article 46 is Entirely a Question of Fact</u>

63.    FFPO's final notice argument deals with Article 46 to the Contract. Subsection b to Article 46 provides:

> b. Notice
>
> Notice of a claim, other than a claim for an excusable delay, by either party shall be made in writing within 21 days of the occurrence giving rise to the claim or within 21 days that the claimant became aware of the claim, whichever is later.

64.    Article 46 requirements are left similarly ambiguous. Other than the requirement that this notice be provided in writing, the provision as drafted leaves a subjective determination to S&B for when a claim arises. In its motion, FFPO concludes that S&B did not provide notice of the claim within 21 days even though the notice requirement in Article 46 presents a factual inquiry for when S&B became aware of the claim.

65.    To reiterate S&B's understanding of the facts surrounding the Change Order Requests, S&B submitted COR076R0 but upon its rejection FFPO instructed S&B to continue working and submit another request once further documentation could be compiled. Whether or not S&B was aware of a claim at this time, or at any time, is entirely a question of fact that should be left to the Court to determine and FFPO's Motion should therefore be denied.

    **3. Article 34 Is Inapplicable to this Dispute**

66.    FFPO maintains that S&B has waived an Article 34 claim for a "differing site condition." However, S&B has not raised an Article 34 claim in its petition.

67.    FFPO points to *Engineered Maint. Servs., Inc. v. United States*, 55 Fed. Cl. 637 (2003), to support its claim that it was prejudiced by the lack of notice from S&B. FFPO's interpretation adds substance not found in S&B's claim and is premised on a distortion of *Engineered Maint. Servs.* and is therefore inapplicable. S&B is not claiming any issues with the physical condition of the site or its subsurface, as interpreted by FFPO. Instead, S&B's claim is for incomplete and deficient specifications provided by FFPO from the outset that have led to unexpectedly voluminous excavation spoils as S&B prosecuted the excavation work. The emphasis is on the scope of work rather than the condition of the subsurface which negates any application of Article 34.

68.    In any event, as with FFPO's other claims, this claim is riddled with fact questions for the Court to decide including, (1) whether Article 34 or 35 is appliable, (2) whether notice was properly given, and (3) whether FFPO was prejudiced. Therefore, there is a genuine dispute of material fact making summary judgment for FFPO inappropriate.

## C.   S&B Is Not Barred from Asserting Other Remedies

### 1.  Quantum Meruit

69.    Quantum Meruit is an equitable remedy S&B included in its original petition. In its motion, FFPO claims this remedy is unavailable because there is a contract governing the work performed.

70.    It is "standard practice" under Texas law to plead quantum meruit as an alternative to breach of contract. *Centex Corp. v. Dalton*, 840 S.W.2d 952, 955 (Tex. 1992). The

Supreme Court of Texas has acknowledged that although a party cannot recover on both the basis of an express contract and quantum meruit, plaintiffs should nevertheless "*allege both theories as alternative bases of recovery, particularly if there is the possibility that the contract might be found to be invalid.*" *Id.* at 955 n.7 (alteration in original) (citation omitted).

71.     This reasoning is consistent with federal pleading standards. *See* Fed. R. Civ. P. 8(d)(2) (permitting parties to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones"). Additionally, "a party may state as many separate claims or defenses as it has, **regardless of consistency**. *Id.* 8(d)(3) (emphasis added). Given the common and encouraged practice of pleading quantum meruit in alternative to breach of contract, the fact that an express contract exists does not preclude S&B from bringing the claim. Judgment should therefore be denied.

### 2.  Texas Prompt Pay Act

72.     FFPO's last argument is that the Prompt Pay Act should not be used to award interest on the outstanding payments S&B seeks. FFPO claims that because there is no breach of contract available for S&B based on the arguments it makes earlier in the motion, then there is no interest available either.

73.     As the rest of this response highlights, all of S&B's claims have significant fact questions that preclude summary judgment and therefore cannot be the foundation for dismissing S&B's Prompt Pay Act claim either. FFPO has not met its summary judgment burden.

## VI. CONCLUSION

For the reasons stated above, and based upon the summary judgment evidence attached hereto, S&B asks this Court to deny FFPO's Motion, and to award all other relief to which S&B is entitled.

Respectfully submitted,

**COKINOS | YOUNG**

/s/ *W. Patrick Garner*
Gregory M. Cokinos
Texas Bar No. 04527250
SDTX Bar No. 5073
gmcokinos@cokinoslaw.com
W. Patrick Garner
Texas Bar No. 00798200
SDTX Bar No. 21192
pgarner@cokinoslaw.com
Joshua J. Woods
Texas Bar No. 24091145
SDTX Bar No. 2762248
jwoods@cokinoslaw.com
Four Houston Center
1221 Lamar Street, 16th Floor
Houston, Texas 77010
Tel: (713) 535-5500
Fax: (713) 535-5533

**ATTORNEYS FOR S&B
INFRASTRUCTURE, LTD**

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Plaintiff's Response in Opposition to Defendant Fluor Federal Petroleum Operations, LLC's Motion for Summary Judgment was served pursuant to the Federal Rules of Civil Procedure on September 25, 2025.

/s/ *W. Patrick Garner*
W. Patrick Garner