United States District Court
Southern District of Texas

**ENTERED**

February 05, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| S&B INFRASTRUCTURE, LTD., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:25-cv-00011 |
| | § | |
| FLUOR FEDERAL PETROLEUM | § | |
| OPERATIONS, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a motion for summary judgment filed by Defendant Fluor Federal Petroleum Operations, LLC ("FFPO"). *See* Dkt. 28. On January 21, 2026, I heard oral argument on the motion. Having reviewed the briefing, the record, and the applicable law, and considering the parties' oral arguments, I recommend that the motion be granted in part and denied in part.

## BACKGROUND

This contract dispute arises out of a construction project at the United States Department of Energy ("DOE") Bryan Mound Strategic Petroleum Reserve site (the "Project"). FFPO is the management and operating contractor for the DOE at the Bryan Mound site.

On June 2, 2021, FFPO issued a Request for Offer ("RFO") to prospective bidders—including Plaintiff S&B Infrastructure, Ltd.—inviting them to submit an offer for construction work related to the replacement of infrastructure, including excavation and underground piping at the Bryan Mound site. Dkt. 28-6 at 4.

On July 6, 2021, FFPO issued Solicitation Amendment 002 to the RFO which incorporated the following question from a prospective bidder and response from FFPO:

| 007 | If we come to a scenario where the quantities we derive from taking off the steel and civil drawings are different from the quantities stated in the pricing summary, which quantity shall take precedence? | These are intended to be neat quantities in accordance with the Approved-For-Construction (AFC) drawings (i.e. not inclusive of wastage, compaction, or other installation related factors) and can be treated as 'relied-upon' for bidding and contracting purposes. If offerors determine that the Price Summary Sheet is missing scope, offerors are instructed to add line items in RED in the appropriate tab. | 7/6/2021 |
|---|---|---|---|

Dkt. 28-6 at 4.

On August 31, 2021, FFPO issued Solicitation Amendment 007 to the RFO, which included the following change to the neat quantities provided in the price summary sheet:

> Note(s): 1) Due to some confusion on how excavations are being estimated and bid, FFPO adjusted the [Unit Price Definitions (UPD)] to only include the volume immediately above the excavation. This means the sloping volume is not in the Pricing Summary quantities and the subcontractor must define how much sloping and shoring are required and include that amount in the cost associated with the excavation. The file "***Under Ground Pipe Excavation Before and After Final***" illustrates this difference. A Word file is attached in track changes to highlight the changes; 2) Due to some confusion on how excavations are being estimated and bid, FFPO adjusted the UPD to no longer differentiate between excavation types. Mechanical, hand, and hydro excavation are now combined into 1 excavation method and the subcontractor must determine how much of each are required based on subcontractor's execution plan. A Word file is attached in track changes to highlight the changes.

Dkt. 28-7 at 3.

On January 6, 2022, FFPO awarded the Project to S&B, and the parties executed Subcontract Number 4500057169 with an effective date of December 20, 2021.[1] *See* Dkt. 28-8. That same day, S&B emailed FFPO asking for "[n]ative files for drawings (iso's, piping plans, P&ID's, etc.) vs the large PDF's that were provided with the contract docs." Dkt. 28-9 at 3. On January 21, 2022, Gary Goolsby, the Bryan Mound Project Manager, responded for FFPO:

> I wanted to clear up the request to provide [Pipe Component File (PCF)] files for underground lines to a reduced audience. The PO package has isometrics for above ground lines and piping plans for

---

[1] The Solicitation Amendments are incorporated into the contract by reference. *See* Dkt. 28-8 at 3–4.

underground lines. FFPO did not want to create isometrics for underground lines due [to] elevation uncertainties, underground obstructions and such that would impact the isometric. . . . We provided [a material takeoff (MTO)] for what we believe satisfies the material requirements of the underground lines, but not the detailed fabrication drawings. Could FFPO create these PCF? Yes, but technically those fabrication drawings are in S&B's scope. Additionally, FFPO would have to create a full isometric to create the PCF files, so it is not just a simple process.

To Summarize:

. . . .

3. FFPO can create isometric drawings, but that would require a back charge against the PO. I am not sure S&B would be open to that.

Dkt. 28-11 at 3–4.

On June 17, 2022, S&B issued RFI-0093 asking "FFPO to advise if hydroexcavation can be the primary and initial source of identifying underground obstructions in lieu of [ground penetrating radar (GPR)]. Note that findings during hydroexcavation activities has [sic] been supplemented by visual confirmation by S&B personnel and subcontractors." Dkt. 28-12 at 2. On June 21, 2022, FFPO responded: "If contractor continues to utilize both wanding and hydro excavation, then the requierment [sic] for GPR will not be required." *Id.* at 3. FFPO's response to RFI-0093 was signed by Pat Mikosky, Russell Harp, Scott Knoll, and Gary Goolsby. *See id.*

A year later, on June 30, 2023, S&B emailed FFPO "files explaining the excavation [quantities] at Bryan Mound." Dkt. 28-13 at 3. That email stated that S&B had "143,809 CY of excavation for pipe vs. 37,529 CY in the original bid." *Id.* On July 7, 2023, FFPO responded:

The 37,529 CY in your email below was noted as "Neat Quantities" in the original bid. Regarding the contract, Part IV Attachment 19 (UPDs), section 00.30.0003 (see screenshot below), notes that the CYs given do not measure "Working space, compaction after excavation, de-watering additional excavation for safety requirements and/or any form of shoring.". This is noting that our quantities given do not account for any aspects that [S&B] must implement to perform the work, and therefore are "neat quantities".

> The change in values from 146,046CY to 37,529CY were to account for this attachment and section. The 146,046CY was a preliminary estimate of none [sic] neat quantities and had to be revised to reflect a neat quantity and specified in the proposal and eventually contract.

Dkt. 28-14 at 2.

On July 17, 2023, S&B sent FFPO a "Notice of Differing Site Conditions." Dkt. 28-16 at 2. In that notice, S&B wrote that it had "encountered subsurface physical conditions at the subject jobsite that differ materially from those indicated in subcontract agreement" and asserted that "the volume of excavation required for underground pipe trenches is greater than the volume provided in the pricing summary sheets provided by FFPO that was used as the basis for pricing costs associated with this activity." *Id.*

On July 19, 2023, FFPO responded to S&B's July 17, 2023 letter, stating:

> As per the requirements of Subcontract Part III Terms and Conditions Article 34, Differing Jobsite Conditions, Subcontractor is to notify Company promptly and prior to the disturbance of the differing conditions. Subcontractors lack of notification and further commencement of Work is deemed acceptance of any differing conditions making Subcontractors current notice under this clause not allowable.
>
> Until the total actual neat quantities is established as more than what is in the pricing summary sheet, FFPO will not entertain any change order on this matter. If the experienced neat quantities surpass the pricing summary sheet's quantities as the required work continues, S&B will track and submit a change order for review.

Dkt. 28-17 at 2–3.

On October 17, 2023, S&B submitted COR076R0 seeking an increase to the contract price in the amount of $25,955,740. *See* Dkt. 28-19 at 4. FFPO rejected COR076R0 on November 6, 2023. *See* Dkt. 28-20.

On December 4, 2024, S&B sued FFPO in Texas state court for breach of contract, violation of the Texas Prompt Pay Act and, in the alternative, quantum meruit. FFPO removed the lawsuit to federal court on December 27, 2024. FFPO has moved for summary judgment.

4

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Evidence is viewed "in the light most favorable to the non-moving party, and the movant has the burden of showing this court that summary judgment is appropriate." *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009) (cleaned up).

"The moving party bears the initial burden of showing that there is no genuine issue for trial." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). "[I]f the movant bears the burden of proof on an issue . . . , he must establish beyond peradventure *all* of the essential elements of the [claim or affirmative] defense to warrant judgment in his favor." *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011) (quotation omitted).

Where the movant does not bear the burden of proof, his burden is satisfied by showing that the other party has a "failure of proof on an essential element of its claim [or affirmative defense]." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). A party makes this showing by introducing evidence or by "pointing out . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the [movant] succeeds on that showing, the burden shifts to the [nonmovant] to demonstrate that there *is* a genuine issue of material fact and that the evidence favoring the [nonmovant] permits a jury verdict in the [nonmovant]'s favor." *Joseph*, 981 F.3d at 329.

**ANALYSIS**

FFPO advances five arguments in its summary judgment motion: (1) S&B waived its breach of contract claim because it failed to provide the five-day "Initial Notice" under Subcontract Article 35 concerning "Changes"; (2) S&B waived its breach of contract claim because it failed to provide the 21-day "notice" of a "claim"

5

under Subcontract Article 46; (3) S&B waived its breach of contract claim because it was untimely in notifying FFPO as to Differing Jobsite Conditions under Subcontract Article 34; (4) S&B's Texas Prompt Pay Act claim fails alongside its breach of contract claim; and (5) S&B's claim for quantum meruit is barred by the parties' express contract. I will address each of these arguments in turn.

## A.    ARTICLE 35—CHANGES

FFPO first argues that S&B waived its breach of contract claim under Subcontract Article 35 when it failed to submit a five-day "Initial Notice" to FFPO for two reasons: (1) FFPO's alleged failure to provide AFC drawings was a change under the Subcontract; and (2) FFPO's response to S&B's RFI-0093 was a change under the Subcontract.

"Waiver is an affirmative defense, as to which the breaching party bears the burden of proof." *Westfed Holdings, Inc. v. United States*, 407 F.3d 1352, 1360 (Fed. Cir. 2005); *see also JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x. 744, 748 (5th Cir. 2009) ("Under Texas law, waiver is an affirmative defense, and the party seeking to [assert waiver] bears the burden of proof.").[2] "As the party claiming waiver, [FFPO] bears the burden of proof to show by a preponderance of evidence that [S&B] waived its rights to assert its breach of contract claim." *Westfed*, 407 F.3d at 1360; *see also In re State Farm Lloyds, Inc.*, 170 S.W.3d 629, 634 (Tex. App.—El Paso 2005, no pet.) (FFPO has "the burden to show that [S&B]'s alleged failure to comply with [Article 35] constituted an intentional relinquishment of its right to [additional compensation].").

Article 35 provides, in relevant part:

> The SUBCONTRACT shall be subject to change by additions, deletions or revisions thereto by COMPANY. The COMPANY reserves

---

[2] Subcontract Article 49 states: "The determination of any substantive issues of law shall be according to the Federal common law of Government Contracts as stated and applied by Federal judicial bodies and boards of contract appeals of the Federal Government. If there is no applicable Federal Government Contracts law, the law of the State Texas or Louisiana shall apply in the determination of such issues." Dkt. 28-8 at 16. As to waiver, there is no difference between the federal common law and Texas state law.

the right to make changes within the general scope of the SUBCONTRACT by issuance of a **unilateral change order. . . . Only the Subcontract Administrator is authorized on behalf of COMPANY to issue changes whether formal or informal.** SUBCONTRACTOR will be notified of such changes by receipt of additional and/or revised drawings, specifications, exhibits, or other written notification.

If SUBCONTRACTOR considers that a change is involved that could affect its costs of performing the WORK or impacts the critical path of the schedule for performance of the WORK, SUBCONTRACTOR is obligated to inform COMPANY the impact with an Initial Notice within five (5) working days of SUBCONTRACTOR receiving written notification of the change.

Dkt. 28-8 at 12 (emphasis added).

FFPO contends that "S&B was required to provide FFPO with 'Initial Notice' under Article 35 on or before January 28, 2022," which was five working days after Goolsby sent his January 21, 2022 email. Dkt. 28 at 17. Similarly, FFPO contends that "S&B was required to provide FFPO with an 'Initial Notice' under Article 35 by June 28, 2022," which was five working days after Mikosky, Harp, Knoll, and Goolsby responded to S&B's RFI-0093. *Id.* at 20. There is just one problem with FFPO's arguments: neither Mikosky, Harp, Knoll, nor Goolsby was the Subcontract Administrator. Marianne Martin was the Subcontract Administrator. Article 35 is clear: "*Only* the Subcontract Administrator [Martin] is authorized on behalf of [FFPO] to issue changes whether formal or informal." Dkt. 28-8 at 12 (emphasis added).

In its response brief, S&B argues that "a change from FFPO must be sent by the contract administrator, Marriane [sic] Martin." Dkt. 33 at 6. FFPO tries to skirt the plain language of the Subcontract, arguing that "the first paragraph of Article 35 addresses unilateral change orders imposed by FFPO." Dkt. 34 at 7. But the Subcontract does not say that "Only the Subcontract Administrator is authorized on behalf of FFPO to issue *unilateral change orders*." Rather, the Subcontract states: "Only the Subcontract Administrator is authorized on behalf of [FFPO] to issue changes *whether formal or informal*." Dkt. 28-8 at 12 (emphasis added). The

7

use of "formal or informal" confirms that "change" means *any* change, not just a "unilateral change order." *Id.* Furthermore, S&B's Initial Notice obligation is triggered only upon "receiving written notification of the change," which can be issued "[o]nly" by the Subcontract Administrator. *Id.* Because neither the January 21, 2022 email nor the June 21, 2022 email were sent by Martin, and because there is no evidence in the record that Martin sent written notification of a change to S&B, no Initial Notice obligation was triggered. Accordingly, FFPO is not entitled to summary judgment on its affirmative defense that S&B waived its breach of contract claim under Article 35.

**B.    ARTICLE 46—CLAIMS**

FFPO next argues that "S&B waived its claim for breach of contract under Subcontract Article 46 by failing to timely assert a claim following FFPO's rejection of COR076R0." Dkt. 28 at 23. Again, FFPO's waiver argument is an affirmative defense on which FFPO bears the burden of proof. *See Westfed*, 407 F.3d at 1360.

Article 46 states:

a.    Time Limit On Claims

The parties to this SUBCONTRACT shall commence all claims and causes of action again [sic] the other and arising out of or related to the SUBCONTRACT, whether in contract, tort, breach of warranty or otherwise, within four (4) years of Substantial Completion of this SUBCONTRACT.

b.    Notice

Notice of a claim, other than a claim for an excusable delay, by either party shall be made in writing within 21 days of the occurrence giving rise to the claim or within 21 days that the claimant became aware of the claim, whichever is later.

Dkt. 28-8 at 15.

FFPO argues that its November 6, 2023 rejection of COR076R0 "triggered a 21-day period for which S&B was required to provide FFPO written notice of a claim under the Subcontract's Claims provision." Dkt. 28 at 23. S&B retorts that whether it was aware of a claim is a fact issue because "upon its rejection [of COR076R0] FFPO instructed S&B to continue working and submit another

request once further documentation could be compiled." Dkt. 33 at 21. Specifically, in rejecting S&B's request for a change, Martin wrote: "S&B should not submit additional CORs related to this matter unless actual evidence is provided to support a change in requirements." Dkt. 28-20 at 2. Because Martin left the door open to a future change approval, a reasonable factfinder could conclude that S&B had not yet become aware of a claim sufficient to trigger Article 46's 21-day notice requirement. Accordingly, FFPO is not entitled to summary judgment on its affirmative defense that S&B waived its breach of contract claim under Article 46.

## C.      ARTICLE 34—DIFFERING JOBSITE CONDITIONS

FFPO next argues that "S&B waived its claim for breach of contract under Article 34 of the Subcontract by failing to timely notify FFPO promptly and prior to disturbing the alleged differing site conditions at the Project." Dkt. 28 at 26. Again, FFPO's waiver argument is an affirmative defense on which FFPO bears the burden of proof. *See Westfed*, 407 F.3d at 1360.

> Article 34 states:
>
> SUBCONTRACTOR shall promptly, and before the conditions are disturbed, give a written notice to COMPANY, of (1) subsurface or latent physical conditions at the Jobsite which differ materially from those indicated in this SUBCONTRACT, or (2) physical conditions at the Jobsite, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this SUBCONTRACT.
>
> COMPANY shall investigate the Jobsite conditions promptly after receiving the notice. If the conditions do materially so differ and cause an increase or decrease in SUBCONTRACTOR'S cost of, or the time required for, performing any part of the work under this SUBCONTRACT, whether or not changed as a result of the conditions, an equitable adjustment shall be made under this clause and this SUBCONTRACT modified in writing accordingly. If the impact from the differing jobsite conditions is an Excusable Delay as defined in this SUBCONTRACT, any equitable adjustment will be limited to a noncompensable extension to the performance schedule.
>
> No request by SUBCONTRACTOR for an equitable adjustment under this clause shall be allowed, unless the written notice required in

Paragraph above is timely given. Commencement of Work by the SUBCONTRACTOR is acceptance of all conditions.

Dkt. 28-8 at 12.

FFPO argues that "[b]y providing notice of differing site conditions more than a full year after beginning the work, S&B unilaterally eliminated any possibility of cost minimization by FFPO, acting on behalf of the Government," and thus the court should "grant summary judgment on S&B's differing site conditions claim." Dkt. 28 at 29. S&B retorts that it "has not raised an Article 34 claim in its petition." Dkt. 33 at 22. Rather, "S&B's claim is for incomplete and deficient specifications provided by FFPO from the outset that have led to unexpectedly voluminous excavation spoils as S&B prosecuted the excavation work." *Id.* Attempting to defeat this argument, FFPO cites the Federal Circuit's decision in *Comtrol, Inc. v. United States* for the proposition that "differing site conditions and defective specifications claims . . . collapse into a single claim . . . where the alleged defect in the specification is the failure to disclose the alleged differing site condition." Dkt. 34 at 16 (quoting *Comtrol, Inc. v. United States*, 294 F.3d 1357, 1362 (Fed. Cir. 2002)).

But S&B's claim is not about differing site conditions. Rather, S&B complains that "FFPO's specification section 01010-LE2 Item 2.05 states '*All underground piping is to be buried with a 3' coverage consideration from top of pipe to top of grade*,'" Dkt. 28-4 at 8, when in reality, "the underground piping required excavations to depths of up to fourteen (14) feet." Dkt. 1-3 at 3.

Moreover, this case is distinguishable from *Comtrol*. In *Comtrol*, the contractor encountered unexpected quicksand at the site and alleged "(1) that the quicksand constituted a differing site condition, and (2) that the specification was defective for failure to disclose the presence of quicksand." 294 F.3d at 1362. The Federal Circuit found that the alleged different site conditions and defective specifications were one in the same because "the specification did not affirmatively represent that only hard material would be encountered." *Id.* at 1363. Here,

however, there is a genuine dispute of material fact as to whether "FFPO misled S&B to believe the guaranteed quantities were based on AFC underground isometric drawings for construction and AFC drawings would be provided to S&B for prosecution of the Work." Dkt. 28-4 at 16; *see also id.* at 10–11. Accordingly, FFPO is not entitled to summary judgment on its affirmative defense that S&B waived its breach of contract claim under Article 34.

### D.   TEXAS PROMPT PAY ACT

The parties recognize that S&B's Texas Prompt Pay Act claim rises or falls with S&B's breach of contract claim. *See* Dkt. 28 at 31 ("The remedies available under the Texas Prompt Pay Act require an underlying breach of contract."); *see also* Dkt. 33 at 23 ("FFPO claims that because there is no breach of contract available for S&B . . . , then there is no interest available [under the Texas Prompt Pay Act claim] either."). As established above, FFPO has not demonstrated entitlement to summary judgment on any of its affirmative defenses to S&B's breach of contract claim. Because S&B's breach of contract claim survives FFPO's motion for summary judgment, S&B's Texas Prompt Pay Act claim must also survive.

### E.   QUANTUM MERUIT

Lastly, FFPO argues that the parties' express contract precludes S&B's claim for quantum meruit. "The express contract defense is an affirmative defense on which [FFPO] has the burden of proof." *Rise Above Steel Co. v. Liberty Mut. Ins. Co.*, 656 S.W.3d 577, 586 (Tex. App.—El Paso 2022, no pet.).

"A recovery in quantum meruit is based on an implied-in-law contract. That is, a contract in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice." *Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007). "Recovery on an express contract and on quantum meruit are inconsistent. Where there exists a valid express contract covering the subject matter, there can be no implied contract." *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964). It is undisputed that the parties here

have an express contract that governs this dispute. Accordingly, FFPO has carried its burden regarding its express contract affirmative defense.

Because FFPO has established its express contract affirmative defense, the burden falls to S&B to demonstrate some exception. S&B argues that Texas courts encourage plaintiffs to "*allege both theories as alternative bases of recovery, particularly if there is the possibility that the contract might be found to be invalid.*" Dkt. 33 at 23 (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 955 n.7 (Tex. 1992)). True as that may be, we are at the summary judgment phase of this proceeding, not the motion to dismiss stage. S&B does not even suggest that its express contract with FFPO might be found to be invalid, much less point to evidence in the record that would support such an argument. Accordingly, FFPO is entitled to summary judgment on S&B's claim for quantum meruit.

## CONCLUSION

For the reasons discussed above, I recommend that FFPO's motion for summary judgment (Dkt. 28) be granted as to S&B's claim for quantum meruit and denied in all other respects.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 5th day of February 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

12